## Brown *v.* Hicks.

*(District Court, D. Massachusetts.  May 4, 1881.)*

1. RESCISSION—USAGE—GOOD CAUSE.

   In the light of the usages of the port of New Bedford, the common contract to perform a whaling voyage can be terminated by either party for good cause. Information justifying a party to such a contract in concluding that the voyage had failed, and could no longer be prosecuted with success, constitutes good cause.

2 SAME—CONTRACT—CONSTRUCTION—USAGE.

   By a written contract the libellant agreed to proceed from the port of New Bedford to Mahe, Seychelle islands, and on his arrival there take charge of a bark and perform a whaling voyage in it, not exceeding three years in duration, and then return with it to said port; and the respondent, in consideration of the libellant's services, agreed to pay him a certain share of the net proceeds of the cargo obtained during said term. The libellant went to Mahe and took charge of the bark, and made in her an unsuccessful cruise, extending over a period of six months, when, becoming short-handed by desertion and otherwise, obedient to an order from the respondent he brought the vessel to New Bedford. *Held*, that, under the circumstances, the respondent can rescind the contract.

3. PARTNERSHIP—IMPLIED CONDITIONS.

It seems that the contract is one of partnership, and that one of the implied conditions of such a contract is that either of the parties to it is at liberty to withdraw from the adventure whenever it becomes reasonably certain that it can no longer be prosecuted with success.

4. RESCISSION—ACQUIESCENCE.

It seems, further, that a letter written to the respondent on the date the order to return was received, in the terms following : "I very reluctantly comply with your request. Your views may be right, to a certain extent, as I am situated now, for we have seen sperm whales three times since we left Mahe Banks, but taken no oil. I believe if we had been properly manned we should have made a good show, although the chances were not the best. I should have liked very much to have had a man, and taken the season off the river, then gone north, and finished up the time as per agreement; but as you think it best for all concerned that the ship shall return to New Bedford direct, I will bring her there as fast as wind and weather will permit,"—amounts to an acquiescence in the rescision.

*W. C. Parker, Jr.,* for libellant.

*Marston & Cobb,* for respondent.

NELSON, D. J. Libel *in personam* by the late master, against the managing owner and agent of the whaling ship Andrew Hicks, to recover damages for the alleged breach of a written contract signed by the parties, by which the libellant agreed "to proceed from the port of New Bedford to Mahe, Seychelle islands, by steamer, and on his arrival there take charge as master of the bark Andrew Hicks, and perform a whaling voyage in said bark, not exceeding three years in duration, and return with said bark to the port of New Bedford;" and the respondent, in consideration of the libellant's services, agreed "to pay the said Brown the one-fiftieth lay or share of the net proceeds of the cargo obtained by said bark during the term of his services as master thereof." At the date of the contract, August 24, 1877, the Andrew Hicks was on a whaling voyage in the Indian ocean, without a master, and in charge of her chief mate.

The libellant went to Mahe, as agreed in the contract, and took command of the ship on the thirteenth of December, 1877. After cruising in the vicinity of the Seychelle islands and the coast of Madagascar until the following June, occasionally putting into Mahe, he then sailed for St. Helena, intending to proceed from there to the whaling grounds off the river La Plata. Before sailing for St. Helena, his first and second mates had become dissatisfied and had been discharged, his fourth mate had been left behind sick at Mahe, nearly all his original crew had deserted, and their places had been supplied from the natives of the islands, and his only remaining officer was Murray, the third mate. On his arrival at St.

Helena, July 29th, he found a letter awaiting him from the respondent, ordering him to take the ship home. He sailed for New Bedford in obedience to this order, arriving there October 19, 1878. He took no oil during the entire voyage. I agree with the libellant that the contract should be construed in the light of the usages of the port of New Bedford, and, being so construed, it provided for a whaling voyage to continue for the term of three years, or until an earlier accomplishment of its purpose; and in the mean time neither party had the right, at his own pleasure and against the will of the other, to put an end to the voyage, except for good cause; and, unless good cause existed, the action of the respondent in ordering the ship home in July, 1878, and thus breaking up the voyage, was a violation of the contract, for which he is responsible to the libellant in damages. Is such cause shown?

The contract was strictly one of partnership, by which the owner was to contribute his capital, and the master was to contribute his time and services, and each to share in the profits of the joint adventure in the stipulated proportions. It is one of the implied conditions of such a contract that either of the parties is at liberty to withdraw from the adventure whenever it becomes reasonably certain that it can no longer be prosecuted with success. The only information concerning the voyage upon which the respondent could act was furnished by the letters written home by the libellant from Mahe. In his letters of January 3d, January 8th, February 4th, and February 24th, he wrote that the first and second mates had left the ship, refusing to serve longer under him; that nearly all the old crew had deserted, but he had succeeded in picking up men enough to man three of the four boats by taking Creoles who could not speak English. In his letter of February 24th he writes:

"As things stand I have decided to make St. Helena my next port; shall be there by the last of July, when I shall expect to hear from you. I should say, if I might be allowed to suggest, that you send me both a mate and a second mate, although I can get along very well with Murray for second mate. The difficulty will be to get some one to fill his place. If you should decide to send some one out, I can take them from any place you may name on the coast of Brazil, for I am thinking very strongly of taking the season off the river. I feel that it is absolutely necessary for the benefit of the voyage that a mate should be sent out. I will leave the rest to your good judgment. It is possible I may get a very good man at St. Helena to take Murray's place, although I think it would be the better plan to send a man, providing you have a chance to send them direct to St. Helena by a sailing vessel. If you should deem it necessary to send a mate out at once by steamer, by the way of England, I will endeavor to get along without the second man."

In none of his letters did he report the taking of any oil. When the letter of February 24th reached the respondent he was unable to procure suitable mates to go out and serve in the ship.

Under all the circumstances, I am of opinion that the respondent was right, as a prudent owner, in concluding, upon the information in his possession, that the voyage had failed and could no longer be prosecuted successfully, and that he was justified in ordering the ship home. By the libellant's own account, she was in no condition for whaling. To put her in such a condition it would be necessary to send out from home a chief mate, at least, and the others as well, unless the respondent was willing to run the risk of the libellant's being able to find them at St. Helena, of which the likelihood was small. This risk he was not bound to incur, and as he was unable to procure suitable officers to send out, no other course seemed open to him than the one which he adopted. The libellant himself seems to have been well convinced at the time that the action of the respondent was wise. In a letter written home on the date he received the order to return, he wrote:

"I very reluctantly comply with your request. Your views may be right to a certain extent, as I am situated now, for we have seen sperm whales three times since we left Mahe Banks, but taken no oil. I believe if we had been properly manned we should have made a good show, although the chances were not the best. I should have liked very much to have had a man, and taken the season off the river, then gone north, and finished up the time as per agreement. But as you think it best for all concerned that the ship shall return to New Bedford direct, I will bring her there as fast as wind and weather will permit."

This language may be fairly construed as an acknowledgment that the respondent's course was right and proper under the circumstances, and as an acquiescence in his decision. The voyage seems to have been unfortunate from the beginning, but through no fault of the libellant.

The case is certainly a hard one for him; and, although I am unable to find any way to award him damages on his contract, I shall not require him to pay costs.

Libel dismissed, without costs.